UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DONALD NYBLOM,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>OFFICER O'DONNELL, #164 individually and in his official capacity, and OFFICER JONATHAN SICKLES, #150 individually and in his official capacity,<br><br>　　　　　Defendants. | CAUSE NO.: 2:22-CV-29-TLS |

**OPINION AND ORDER**

This matter is now before the Court on the Defendants' Motion for Summary Judgment [ECF No. 22]. The Motion for Summary Judgment is fully briefed. For the reasons set forth below, the Court grants the Motion.

**PROCEDURAL BACKGROUND**

On March 25, 2020, the Plaintiff filed suit in state court after he was arrested and handcuffed on March 28, 2018, by Defendants Officer O'Donnell and Officer Sickles. *See* Compl., ECF No. 2. The Defendants removed the case to federal court on February 14, 2022. ECF No. 1. The Complaint brings the following claims against Officer O'Donnell and Officer Sickles: violation of 42 U.S.C. § 1983 for false arrest (Count I); violation of 42 U.S.C. § 1983 for excessive force (Count II); battery (Count III); and intentional infliction of emotional distress (Count IV). ECF No. 2. The Complaint also brings a claim against the Town of Dyer Police Department for respondeat superior liability (Count V). *Id*. The Defendants filed their Answer on March 7, 2022. ECF No. 6.

On October 3, 2022, Defendants Town of Dyer Police Department, Officer O'Donnell, and Officer Sickles filed a motion for partial judgment on the pleadings. ECF No. 15. On May 30, 2023, the Court granted the motion, dismissing Counts III and IV against Officer O'Donnell and Officer Sickles in their individual capacities and dismissing the Town of Dyer Police Department as a party. ECF No. 21.

On July 12, 2023, following the close of discovery, *see* ECF No. 19, the Defendants filed the instant Motion for Summary Judgment. The Plaintiff filed a motion for leave to file a belated response to the Defendant's Motion [ECF No. 31] on September 18, 2023, which the Court granted [ECF No. 34] on September 19, 2023. The Plaintiff responded on September 18, 2023 [ECF No. 32], and the Defendants replied on September 29, 2023 [ECF No. 36]. The Court now takes up the merits of the Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

2

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MATERIAL FACTS[1]

On March 28, 2018, Officer Sickles stopped the Plaintiff—who was driving his vehicle in a residential area—for failing to stop at a stop sign, failing to use a signal, and a report of reckless driving. Def. Ex. 3, ¶¶ 5, 14–16, ECF No. 25-3. However, the Plaintiff believes that he stopped at the stop sign and used his signal. Def. Ex. 1, p. 30, ECF No. 25-1. When the Plaintiff spoke, Officer Sickles detected a strong odor of alcoholic beverage on the Plaintiff's breath. Def. Ex. 3, ¶ 18. The Plaintiff also spoke in slurred speech and in a thick-tongued manner, his eyes were watery and bloodshot, and his face was flushed and red in color. *Id.*

Officer Sickles advised the Plaintiff that he was being detained in handcuffs. *Id.* ¶ 22. After the Plaintiff exited his vehicle, Officer Sickles grabbed one of the Plaintiff's arms, then grabbed the other arm, and "hooked [him]." Def. Ex. 1, p. 46. Officer Sickles double locked the handcuffs and checked for proper fit. Def. Ex. 3, ¶ 22. Double locking the handcuffs means that the cuffs cannot be tightened further without disengaging the double lock with a handcuff key. *Id.* During the handcuffing, the Plaintiff's hands came together easily behind his back. *Id.* ¶ 23.

---

[1] The facts offered by the parties are considered only to the extent they are supported by the cited evidence of record.

3

The Plaintiff did not resist the handcuffing. Def. Ex. 1, p. 46. On scene, the Plaintiff complained to Officer Sickles twice that the handcuffs were "a little tight." *Id.* at 47–48. Officer Sickles did not remove, modify, or loosen the handcuffs. Def. Ex. 3, ¶ 37. His decision was based on the following: (1) his prior interactions with the Plaintiff and his knowledge of the Plaintiff's uncooperative, untrustworthy, and combative nature; and (2) because he believed the Plaintiff was intoxicated and uncooperative, which could have easily presented a safety issue to both the Plaintiff himself and officers. *Id.*

Officer O'Donnell then placed the Plaintiff in the backseat of his Dyer patrol vehicle, unit #64, and transported him to the Dyer police station. *Id.* ¶ 24; Def. Ex. 4, ¶¶ 12–13, ECF No. 25-4. The transport took about 10 minutes. Def. Ex. 3, ¶ 29. The Plaintiff never complained to Officer O'Donnell that his handcuffs were tight or requested that their positioning be modified or loosened. Def. Ex. 4, ¶ 18.

Officer Sickles met Officer O'Donnell and the Plaintiff at the police station and took over the Plaintiff's custody. Def. Ex. 4, ¶ 23. The Plaintiff was placed in a cell while Officer Sickles completed the booking and processing. Def. Ex. 1, pp. 32–33; Def. Ex. 3, ¶ 33. Once he arrived at the police station, the Plaintiff became more aggressive and belligerent toward Officer Sickles. Def. Ex. 3, ¶ 34. The Plaintiff also complained to an unknown officer, stating that the handcuffs "are a little tight." Def. Ex. 1, p. 48. As a result, "they got loosened up." *Id.* The Plaintiff estimates that he was handcuffed for a couple of hours before they were loosened. *Id.* at 41. At no point did the Plaintiff inform Officer Sickles or Officer O'Donnell that he had any medical or physical condition which would have affected his ability to be or remain handcuffed. Def. Ex. 3, ¶ 40; Def. Ex. 4, ¶ 22.

Officer Sickles charged the Plaintiff with operating a vehicle while intoxicated, issued him citations for disregarding a stop sign and a violation of specialized driver's license, and issued him a written warning for failing to use a turn signal when required. Def. Ex. 3, ¶ 44. The Plaintiff was then transported to Lake County Jail by Officer Mingus. *Id.* ¶ 45. The Plaintiff did not receive any treatment for injuries to his wrists as a result of the handcuffs. Def. Ex. 1, p. 47.

During his deposition, the Plaintiff described the handcuffs as digging into his wrists. *Id.* at 41. He also described the pain from the handcuffs as "five-and-a-half, six to a seven" on a scale of one to ten. *Id.*

## ANALYSIS

The Defendants seek summary judgment on all the Plaintiff's remaining claims.

**A.     42 U.S.C. § 1983**

Section 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must show that the defendant deprived him of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

*1.     Official Capacity*

The Defendants seek summary judgment on the § 1983 claims against the Defendants in their official capacities. Official capacity claims are "to be treated as a suit against the entity" in all but name. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Thus, the claims against the Defendants in their official capacities are really a claim against the Town of Dyer, which the Court addresses below.

*2.    Excessive Force*

In Count II, the Plaintiff brings a § 1983 excessive force claim against the Defendants for not loosening his handcuffs.[2] The Fourth Amendment's objective reasonableness standard governs claims of excessive force by a police officer. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012)). "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest, . . . circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham*, 490 U.S. at 396). The reasonableness of an officer's use of force is a legal determination for the court. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007); *Phillips*, 678 F.3d at 520.

"[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, courts must consider the facts "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Notably, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up).

---

[2] In his summary judgment brief, the Plaintiff does not raise arguments based on a dispute of the facts of his arrest or on the decision to use the handcuffs. Thus, he has waived any argument on those issues. *Barnes-Staples v. Carnahan*, 88 F.4th 712, 719 (7th Cir. 2023) (finding that the plaintiff waived her sex discrimination claim under Title VII when she did not "develop" her argument before the district court by providing evidence or by illustrating specific unlawful conduct); *Coleman v. Hardy*, 690 F.3d 811, 819 (7th Cir. 2012) ("[I]f the argument itself was not adequately developed [before the district court], it is . . . waived.").

Importantly, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The Seventh Circuit has held that "absent any indication an officer is aware the handcuff tightness or positioning is causing unnecessary pain or injury, the officer acts reasonably in not modifying the handcuffs." *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (concluding that evidence of "overly tight handcuffs alone" is insufficient). "[T]he key fact is that the officer must *know* the handcuffs will cause unnecessary pain or injury." *Day*, 947 F.3d at 462; *see Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("The question, however, is whether the officer knows that he is inflicting such pain."). Otherwise, "there was nothing that would have alerted [the officer] to the fact that a constitutional violation was looming." *Rooni*, 742 F.3d at 743.

The Seventh Circuit's opinion in *Tibbs* provides a helpful analogy for determining whether an officer's failure to modify handcuffs is objectively reasonable. There, the plaintiff complained once to an officer that his handcuffs were too tight, gave no indication of the degree of his pain, experienced redness on his wrists for a day and a half after, and sought no medical care. 469 F.3d at 666. The Seventh Circuit concluded that no reasonable jury could find the officer's failure to modify the plaintiff's handcuffs objectively unreasonable because "[the plaintiff] complained to [the officer] once about his handcuffs without elaborating on any injury, numbness, or degree of pain." *Id*. The Seventh Circuit also noted that although "[the plaintiff] experienced redness on his wrists for less than two days," that "he neither sought nor received medical care for any alleged wrist injury," and that "[the plaintiff] cite[d] no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations." *Id*.

7

Viewing the undisputed facts in the light most favorable to the Plaintiff, he fails to raise a genuine issue of material fact that the Defendants' conduct was objectively unreasonable. Here, at the scene of the Plaintiff's arrest, Officer Sickles handcuffed the Plaintiff, double locked the handcuffs so they could not be further tightened, and checked the handcuffs for proper fit; the Plaintiff's hands came together easily behind his back; and, the Plaintiff did not resist the handcuffing. The Plaintiff complained to Officer Sickles twice on scene that the handcuffs were a little tight. Officer O'Donnell then transported the Plaintiff to the Dyer Police Department for booking where the Plaintiff became belligerent and aggressive toward Officer Sickles. At the Dyer Police Department, the Plaintiff complained to an unknown officer that the handcuffs were a little tight, and that officer loosened the handcuffs. Although the Plaintiff was handcuffed for approximately two hours before they were loosened, he was not injured by the handcuffs, and sought no medical treatment.

The Seventh Circuit found the officer's conduct in *Tibbs* was objectively reasonable when the plaintiff complained the handcuffs were too tight and experienced redness on his wrists for a day and a half after. *Id*. But here, the Plaintiff only complained that the handcuffs were a little tight, and there is no evidence of any injury, not even a slight one. The Seventh Circuit's reasoning in *Tibbs* supports a finding in this case that the Defendants' conduct was objectively reasonable. This is because the Plaintiff has not provided evidence that, while handcuffed, he elaborated on what he meant by his handcuffs were a "little tight" by making known to an officer the degree of pain or injury he was experiencing.

The Plaintiff argues that the handcuffs were digging into his wrists and were causing pain at the level of a five to seven on a ten-point pain scale. However, while an elaboration on degree of pain or injury should be accounted for when deciding if an officer's failure to loosen

8

handcuffs is objectively reasonable, *see Rooni*, 742 F.3d at 742, the decision in *Day v. Wooten* demonstrates that to be objectively unreasonable, handcuff pain or injury must have been known to the officer at the time the plaintiff was handcuffed. In *Day*, the plaintiff was handcuffed behind his back, the handcuffs came together easily behind his back, and he complained about trouble breathing but not that the handcuffs were too tight or causing him trouble breathing. 947 F.3d at 456. Although the plaintiff eventually became unresponsive, the *Day* court emphasized that the only indication that the handcuffs were causing his breathing trouble was in the autopsy report. *Id*.

The *Day* court nonetheless found that the plaintiff's "right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury was not violated" because it was not known to the officers at the time that the handcuffs were causing the plaintiff's respiratory issue. *Id*. at 462 (cleaned up). Similarly, here, although the Plaintiff later (in his deposition) described the handcuffs as digging into his wrists and his pain level, the Plaintiff provides no evidence that he communicated this information to the Defendants *at the time* he was handcuffed. Therefore, the Court finds the Plaintiff's argument unavailing.

The Plaintiff points to *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), to support his argument that the Defendants unreasonably tightened his handcuffs and refused to loosen them after he complained. In *Payne*, police arrested a woman and "grabbed her left arm, jerked it into handcuffing position, forced her arm behind her back, slammed the handcuff down on her wrist, jerked her wrist, and tightened the handcuffs until [the woman] could not feel her hands." 337 F.3d at 774. The woman then "protested that the handcuffs were too tight, that she could not feel her hands, and that she was in pain, but the police officers did not loosen the handcuffs or remove them until she arrived at the police station." *Id*. at 774–75. At the police station, an

9

officer "filled out a physical examination form and noted that [the woman] complained that her left wrist and fingers were hurting and going numb." *Id*. at 775. Upon release, she "sought treatment at a local emergency room where she was diagnosed with mild swelling and bruising, and later received treatment from various physicians for injuries resulting from the force used during her arrest." *Id*. The woman "underwent two surgical procedures to treat carpal tunnel injuries which she claim[ed] she sustained during the arrest." *Id*.

The *Payne* court held that "[the officer's] force in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with [] minor offenses, was not objectively reasonable." *Id*. at 779. The elaboration on the effect of the handcuffs to the officers, injuries, and medical treatment present in *Payne* are absent here. Here, the Plaintiff "gave the officers no indication of the degree of his pain [while handcuffed], experienced [no] . . . injury, and sought no medical care." *Tibbs*, 469 F.3d at 666 (distinguishing *Payne v. Pauley* because "*Payne* told the officers her hands were numb and ultimately underwent two surgeries because of wrist injuries caused by the too-tight handcuffs"). Therefore, the Court finds the reasoning in *Payne* inapplicable here and concludes that the Defendants' decision not to loosen the Plaintiff's handcuffs was objectively reasonable because the Plaintiff did not elaborate on his degree of pain or any injury while handcuffed.

Furthermore, the Defendants argue that the decision to not loosen the Plaintiff's handcuffs was objectively reasonable based on safety concerns.[3] "Although 'a person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict

---

[3] The Plaintiff did not respond to the Defendants' "concerns for officer safety and self-harm" argument. *See* Def. Br. 13, ECF No. 28. Thus, he waived any argument on this issue. *See Barnes-Staples*, 88 F.4th at 719; *Coleman*, 690 F.3d at 819.

unnecessary pain or injury,' that right is tempered by the attendant 'risk of flight or threat of injury.'" *Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017) (quoting *Rooni*, 742 F.3d at 742) (cleaned up). Whether a plaintiff presents a risk of flight or threat of injury is examined "from [the officer's] perspective." *Id*. Courts consider whether the risk of flight or threat of injury "outweigh[s]" the information a plaintiff provides an officer "about his condition" connected to the handcuffs. *Id*. at 899–900 (holding that the officer's decision to use handcuffs during a *Terry* stop did not violate the Fourth Amendment when the information the plaintiff provided the officer about his condition "clearly did not outweigh" the threat of injury).

Here, it is undisputed that Officer Sickles believed the Plaintiff was intoxicated and that, as a result, he believed the Plaintiff presented safety concerns for officers and the Plaintiff himself. It is also undisputed that the Plaintiff told Officer Sickles twice on scene only that his handcuffs were "a little tight." Under these circumstances, the Court concludes that Officer Sickles' decision to not loosen the Plaintiff's handcuffs does not violate the Fourth Amendment; this is because the safety concerns the Plaintiff presented to officers and for self-harm based on his intoxicated state constitute a threat of injury that clearly outweighs the information the Plaintiff provided Officer Sickles, namely that his handcuffs were a little tight. *See id*.

Accordingly, the Defendants are entitled to summary judgment in their favor on the Plaintiff's excessive force claim (Count II).

3.  *Qualified Immunity*

The Defendants argue that they are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Thus, the two questions are

"whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). Because the Plaintiff has failed to create a genuine dispute of material fact as to a constitutional violation, the Court need not further address the issue of qualified immunity. *See Los Angeles County v. Rettele*, 550 U.S. 609, 616 (2007); *Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense.").

*4.   Monell Liability*

Finally, even if the Town of Dyer were a party to this action, a municipality like the Town of Dyer can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because there was no constitutional violation based on the handcuffing of the Plaintiff, there can be no *Monell* liability on the part of the Town of Dyer. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that there can be no *Monell* liability in the absence of an underlying constitutional violation).

**B.   Abandoned Claims**

The Defendants also move for summary judgment on the Plaintiff's remaining claims of false arrest in violation of the Fourth Amendment under § 1983 (Count I), battery under Indiana law (Count III), and intentional infliction of emotional distress under Indiana law (Count IV). In his response, the Plaintiff does not address these arguments or defend these claims in any way; thus, he has abandoned his remaining claims. *See Palmer v. Marion County*, 327 F.3d 588, 597

12

(7th Cir. 2003) (concluding that a claim was abandoned when a party failed to defend it "in his district court brief in opposition to summary judgment"). Therefore, the Defendants are entitled to judgment on all the Plaintiff's remaining claims.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendants' Motion for Summary Judgment [ECF No. 22], granting the motion as to the Plaintiff's remaining § 1983 claims of false arrest and excessive force (Counts I and II) and state law claims of battery and intentional emotional distress (Counts III and IV) against the Defendants. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendants Officer O'Donnell, #164 individually and in his official capacity, and Officer Jonathan Sickles, #150 individually and in his official capacity, and against the Plaintiff Donald Nyblom on the remaining Counts I–IV of the Complaint.[4] The Plaintiff takes nothing by his Complaint.

SO ORDERED on February 2, 2024.

                                              s/ Theresa L. Springmann
                                              JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT

---

[4] Count V of the Complaint was previously dismissed. *See* Order, ECF No. 21.